# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-2994

SAN LUIS VALLEY ECOSYSTEM COUNCIL, SAN JUAN CITIZENS ALLIANCE, THE WILDERNESS SOCIETY, and WILDEARTH GUARDIANS,

      Petitioners,

vs.

DAN DALLAS, in his official capacity as Forest Supervisor for the Rio Grande National Forest; and UNITED STATES FOREST SERVICE, a federal agency of the United States Department of Agriculture,

      Federal Respondents.

---

## PETITION FOR REVIEW
## SEEKING DECLARATORY AND INJUNCTIVE RELIEF

---

1.      Petitioners San Luis Valley Ecosystem Council, San Juan Citizens Alliance, The Wilderness Society, and WildEarth Guardians (collectively, "Petitioners") respectfully file this civil suit challenging the actions of Federal Respondents Dan Dallas and United States Forest Service (collectively "Forest Service") to authorize the Rio Grande National Forest Land Management Plan ("Forest Plan" or "Revised Plan") in a final Record of Decision ("ROD") and final Environmental Impact Statement ("FEIS") in Colorado. The final ROD was signed by Forest Supervisor Dallas on May 10, 2020. This suit alleges violations of the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq*.; Forest Service regulations, 36 C.F.R. Part 219 (2012 forest planning rules) and 36 C.F.R. Part 212 (Travel Management Rule); the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et*

*seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and any implementing regulations for these statutes.

2.      In 2014, the Rio Grande National Forest was amongst the first National Forests in the country to initiate a forest plan revision process under newly promulgated 2012 forest planning rules. Despite optimism the Forest Service would employ the vast and innovative tools the 2012 planning rules provided, the Rio Grande National Forest instead sought to eliminate restrictions on discretionary land management actions, and actively sought out–or created–loopholes to avoid complying with the rules' requirements.

3.      For example, despite including species-specific plan components to help recover imperiled species in the draft forest plan, the Rio Grande removed such plan components in the final plan in the name of eliminating management complexity.  Similarly, the Forest Service declined to address sustainable winter recreation during Forest Plan revision simply because the 2012 forest planning rules pertain to sustainable recreation generally, and do not specify winter or summer recreation: the Forest Service therefore willfully ignored planning for one half of the recreational use the Forest experiences.

4.      The Rio Grande National Forest's disappointing approach to forest plan revision and unambiguous violations of law led Petitioners to file the present Petition for Review.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1331. Final agency action exists that is subject to judicial review under to 5 U.S.C. § 704. An actual, justiciable controversy exists between Petitioners and the Forest Service. The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705 & 706.

6.     Venue in this court is proper under 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district. The first named respondent's office is located within this judicial district. The FEIS and ROD at issue in this litigation were prepared within this judicial district. The lands affected by the Forest Plan are located within this judicial district.

7.     Petitioners have exhausted any and all available and required administrative remedies. The claims asserted in this Petition are ripe for judicial review.

## PARTIES

8.     Petitioner SAN LUIS VALLEY ECOSYSTEM COUNCIL ("SLVEC") is a non-profit organization whose mission is to protect and restore, through research, education, and advocacy, the biological diversity, ecosystems, and natural resources of the Upper Rio Grande bioregion, balancing ecological values with sustainable human needs. SLVEC helps to safeguard over 3.1 million acres of public lands and natural resources in the six counties that comprise the San Luis Valley. SLVEC participated in the Rio Grande National Forest Plan revision process since the process began in 2015. SLVEC's staff and members regularly use the Rio Grande National Forest for recreational, spiritual, educational, and scientific pursuits. SLVEC staff and members regularly recreate in areas for the purposes of enjoying wildlife observation and wildlife presence. SLVEC's staff and members enjoy the presence of imperiled species on the Rio Grande National Forest, including the presence of Canada lynx and Uncompahgre fritillary butterfly. SLVEC's staff and its members intend to continue such activities on the Rio Grande National Forest in the future. SLVEC's staff and its members have a procedural interest in ensuring that all Forest Service activities comply with

all applicable federal statutes and regulations. SLVEC, its staff, and its members have an interest in the recovery of imperiled wildlife, including the recovery of Canada lynx and Uncompahgre fritillary butterfly. The interests of SLVEC, its staff, and its members are harmed by the final Land Management Plan, ROD, and FEIS at issue in this litigation, and will continue to be harmed so long as the plan as currently written is in effect without compliance with federal environmental laws. The final Land Management Plan, ROD, and FEIS at issue in this litigation impair the enjoyment of SLVEC, its staff, and its members in the lands making up the Rio Grande National Forest. The final Land Management Plan, ROD, and FEIS at issue in this litigation impair the interests of SLVEC, its staff, and its members in imperiled species recovery, including the recovery of Canada lynx and Uncompahgre fritillary butterfly.

9.      Petitioner SAN JUAN CITIZENS ALLIANCE is a non-profit organization headquartered in Durango, Colorado and advocates for clean water, pure air, and healthy lands in the San Juan Basin. San Juan Citizens Alliance has more than 1,000 staff and members. San Juan Citizens Alliance staff and members regularly recreate on and otherwise enjoy the Rio Grande National Forest. San Juan Citizens Alliance's staff and members regularly visit the Rio Grande National Forest for its outstanding opportunities to enjoy solitude, hiking, hunting and fishing opportunities, and other quiet-use activities, and intend to do so again in the future. San Juan Citizens Alliance's staff and members regularly recreate in areas for the purposes of enjoying wildlife observation and wildlife presence. San Juan Citizens Alliance's staff and members enjoy the presence of imperiled species on the Rio Grande National Forest, including the presence of Canada lynx and Uncompahgre fritillary

butterfly. San Juan Citizens Alliance, its staff, and its members have an interest in the recovery of imperiled wildlife, including the recovery of Canada lynx and Uncompahgre fritillary butterfly. San Juan Citizens Alliance has been deeply involved in the Rio Grande National Forest Plan revision process. San Juan Citizens Alliance and its members have a procedural interest in ensuring that all Forest Service activities comply with all applicable federal statutes and regulations. The interests of San Juan Citizens Alliance, its staff, and its members are harmed by the final Land Management Plan, ROD, and FEIS at issue in this litigation, and will continue to be harmed so long as the plan as currently written is in effect without compliance with federal environmental laws.

10.      Petitioner THE WILDERNESS SOCIETY ("TWS") is a non-profit organization, founded in 1935, dedicated to uniting people to protect America's wild places. TWS has over 280,000 members and supporters across the United States, including over 17,000 who live in the State of Colorado as well as staff offices in Denver, Durango, and Grand Junction, Colorado. TWS's goal is to ensure that future generations will enjoy the clear air and water, wildlife, natural beauty, opportunities for recreation, and spiritual renewal that pristine forests, rivers, deserts, and mountains provide. TWS members regularly recreate and enjoy wildlands throughout Colorado, including lands on the Rio Grande National Forest. TWS members have engaged in these activities in the past and intend to do so in the future. Over at least six years, TWS and its members have been deeply involved in the Rio Grande National Forest Plan revision process with the goals of protecting priority wildlands and landscape connectivity as well as ensuring that all Forest Service activities comply with applicable federal statutes and regulations. The Rio Grande National Forest is within TWS's

"San Juan Mountains Priority Landscape," one of 14 landscapes nation-wide where TWS focuses its work to protect important social and ecological values. TWS was instrumental in leading public and stakeholder engagement in the opportunity to manage the Rio Grande National Forest for landscape-scale connectivity, including by protecting important trans-boundary wildlife corridors across Colorado and New Mexico. The interests of TWS and its members have been and will continue to be harmed by the Rio Grande National Forest Plan so long as the plan remains deficient in substance and out of compliance with federal environmental laws.

11.     Petitioner WILDEARTH GUARDIANS is a non-profit organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. WildEarth Guardians has more than 194,500 members and activists across the American West, including many who reside in the State of Colorado. WildEarth Guardians' members regularly recreate throughout Colorado, including on the Rio Grande National Forest, for the purposes of recreation, observing and attempting to observe wildlife, solitude, and other recreational and professional pursuits. WildEarth Guardians' members have engaged in these activities in the past, and intend to do so again in the near future. WildEarth Guardians and its members have a procedural interest in ensuring that all Forest Service activities comply with all applicable federal statutes and regulations. The interests of WildEarth Guardians and its members have been harmed by the Rio Grande National Forest Plan, and will continue to be harmed so long as the plan as currently written is in effect without compliance with federal environmental laws.

12.     The aesthetic, recreational, scientific, educational, and other interests of Petitioners and their members have been and will continue to be adversely affected and irreparably injured if the Forest Service continues to act and fails to act as alleged, and affirmatively implements the Forest Plan that Petitioners challenge with this litigation. These are actual, concrete, particularized injuries caused by the Forest Service's failure to comply with mandatory duties under NFMA, NEPA, the 2012 forest planning rules, the Travel Management Rule, and the APA. The relief sought in this case would, if granted, redress these injuries.

13.     Petitioners' staff and members use and enjoy the Rio Grande National Forest for skiing, snowshoeing, hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other aesthetic, recreational, scientific, spiritual, vocational, and educational activities. Petitioners' staff and members use the areas within the Rio Grande National Forest that have been designated as open to snowmobile (Over Snow Vehicle or "OSV") use through the Revised Plan. As a result of the decisions made in the Revised Plan, their use and enjoyment of these specific areas will be diminished. Petitioners' members intend to continue to use and enjoy the affected areas on the Rio Grande National Forest frequently and on an ongoing basis in the future.

14.     Petitioners' staff and members have an interest in healthy, functioning ecosystems on the Rio Grande National Forest. Petitioners' staff and members have an interest in the recovery of imperiled species, including Canada lynx and Uncompahgre fritillary butterfly. Petitioners' staff and members work to protect habitat for imperiled species on the Rio Grande National Forest, including Canada lynx and Uncompahgre fritillary butterfly.

Petitioners' staff and members enjoy attempting to observe imperiled wildlife while recreating on the Rio Grande National Forest, including Canada lynx and Uncompahgre fritillary butterfly, as well as studying their sign (evidence of their presence). Given that human recreation is a threat to Uncompahgre fritillary butterfly, Petitioners' staff and members are careful to tailor their recreation to avoid causing harm to Uncompahgre fritillary butterfly colonies, individuals, and their food sources. The presence of imperiled species on the Rio Grande National Forest–including Canada lynx and Uncompahgre fritillary butterfly–adds to the enjoyment of Petitioners' staff and members in recreating on the Rio Grande National Forest, even if they cannot physically see individuals of the species.

15.     Because forest plans are only revised once every 15-30 years, the Forest Service's failure to comply with the law in developing and approving the Rio Grande National Forest's Revised Plan has harmed Petitioner's interests in the Rio Grande National Forest and the wildlife that reside on it, and will continue to do so for years or decades into the future. This has also caused Petitioner's procedural harm.

16.     The aesthetic, recreational, scientific, spiritual, vocational, and educational interests of Petitioners' members have been and will be adversely affected and irreparably injured if the Forest Service is allowed to continue implementing the Revised Plan as approved. These are actual, concrete injuries caused by the Respondents' failure to comply with mandatory duties as alleged in this Petition. Petitioners and their members have also suffered procedural harm from the Forest Service's failure to comply with mandatory duties as alleged in this Petition. The requested relief would redress these injuries. This Court has the authority to grant Petitioners' requested relief.

17.     Each Petitioner includes within its mission and purpose the promotion of sound use of public lands, the protection of the wildlife that inhabit such lands, and the promotion of non-motorized winter recreation opportunities on public lands. Petitioners have an interest in ensuring that federal agencies follow the law. Petitioners' organizational interests are adversely affected and injured by the Forest Service's failures as described in this Petition for Review.

18.     There remains no mandatory future federal action that would allow Petitioners' injuries to be addressed, redressed, or otherwise alleviated absent intervention by this Court.

19.     If this Court issues the relief requested, the harm to Petitioners' missions and that suffered by their members and supporters will be alleviated and/or lessened.

20.     Respondent DAN DALLAS is the Forest Supervisor for the Rio Grande National Forest. He is sued in his official capacity. As the Forest Supervisor for the Rio Grande National Forest, Mr. Dallas signed the ROD for the Forest Plan. Mr. Dallas is the federal official with responsibility for all of the Forest Service officials' actions and inactions challenged in this Petition for Review.

21.     Respondent UNITED STATES FOREST SERVICE is an agency of the United States and is a division of the Department of Agriculture. The Forest Service is charged with managing the lands and resources within the Rio Grande National Forest in accordance with federal laws and regulations.

//

//

//

# FACTS

*Forest Planning*

22.    Land Management Plans (or Land and Resource Management Plans), more commonly known as Forest Plans, are the primary source of direction for a National Forest. Forest Plans are meant to provide forest-wide, geographic area, and management area desired conditions, objectives, standards, guidelines, and suitability of lands for specific uses.

23.    Plan components guide future project and activity decisionmaking. Forest plans must indicate whether specific plan components apply to the entire plan area, to specific management areas or geographic areas, or to other areas as identified in the plan.

24.    Desired conditions are a type of plan component. Desired conditions are a description of specific social, economic, and/or ecological characteristics of the plan area, or a portion of the plan area, toward which management of the land and resources should be directed. Desired conditions must be described in terms that are specific enough to allow progress toward their achievement to be determined, but do not include completion dates.

25.    Objectives are a type of plan component. Objectives are a concise, measurable, and time-specific statement of a desired rate of progress toward a desired condition or conditions.

26.    Standards are a type of plan component. Standards are a mandatory constraint on project and activity decisionmaking, established to help achieve or maintain the desired condition or conditions, to avoid or mitigate undesirable effects, or to meet applicable legal requirements.

27.     Suitability of lands are a type of plan component. Forest plans must identify specific lands within the plan area that are suitable for various multiple uses or activities based on the desired conditions applicable to those lands.

28.     The National Forest Management Act (NFMA) directs revision of Forest Plans from time to time based on significant changes in conditions, but at least every fifteen years.

29.     The Forest Service's 2012 forest planning rules, 36 C.F.R. § 219 *et seq.*, require inclusion of plan components, including standards or guidelines, that address social and economic sustainability, ecosystem services, and multiple uses integrated with the plan components for ecological sustainability and species diversity.

30.     The Forest Planning Rules require plan components to maintain or restore vegetation and ecosystems to provide for species diversity, including threatened and endangered species.

31.     The Forest Planning Rules require plan components to provide for sustainable recreation. The Forest Planning Rules require plan components to address recreation settings, opportunities, and access, as well as scenic character.

32.     Sustainability means the capability to meet the needs of the present generation without compromising the ability of future generations to meet their needs.

33.     Sustainable recreation means the set of recreation settings and opportunities on the National Forest System that is ecologically, economically, and socially sustainable for present and future generations.

34.     Ecological sustainability refers to the capability of ecosystems to maintain ecological integrity. Economic sustainability refers to the capability of society to produce and consume

or otherwise benefit from goods and services including contributions to jobs and market and nonmarket benefits. Social sustainability refers to the capability of society to support the network of relationship, traditions, culture, and activities that connect people to the land and to one another, and support vibrant communities.

35.    The Forest Service's 2012 forest planning rules impose both substantive and procedural requirements on the Forest Service.

36.    In revising Forest Plans, the Forest Service is required to consider and abide by the best available science.

37.    In utilizing the best available science to provide for the diversity of plant and animal communities on the national forests, the 2012 forest planning rules "adopt[] a complementary ecosystem and species-specific approach to maintaining the diversity of plant and animal communities and the persistence of native species in the plan area. Compliance with the ecosystem requirements of paragraph [§219.9](a) is intended to provide the ecological conditions to both maintain the diversity of plant and animal communities and support the persistence of most native species in the plan area. Compliance with the requirements of paragraph [§219.9](b) is intended to provide for additional ecological conditions not otherwise provided by compliance with paragraph [§219.9](a) for individual species as set forth in paragraph [§219.9](b)." 36 C.F.R. § 219.9. This "complementary approach" is known as the coarse filter/fine filter approach.

38.    The coarse filter provisions are found at 36 C.F.R. § 219.9(a), and consist of two provisions. First, Forest Plans must "include plan components, including standards or guidelines, to maintain or restore the ecological integrity of terrestrial and aquatic ecosystems

and watersheds in the plan area, including plan components to maintain or restore their structure, function, composition, and connectivity." 36 C.F.R. § 219.9(a)(1). And second, Forest Plans must "include plan components, including standards or guidelines, to maintain or restore the diversity of ecosystems and habitat types throughout the plan area." 36 C.F.R. § 219.9(a)(2). These plan components must maintain or restore "key characteristics associated with terrestrial and aquatic ecosystem types;" and "rare aquatic and terrestrial plant and animal communities[.]" *Id.*

39.    The fine filter provisions are found at 36 C.F.R. § 219.9(b), the use of which is required if the Forest Service determines the plan components required by 36 C.F.R. § 219.9(a) are insufficient to "provide the ecological conditions necessary to: contribute to the recovery of federally listed threatened and endangered species…." 36 C.F.R. § 219.9(b)(1).

40.    The 2012 forest planning rules require Forest Plans include plan components to provide for sustainable recreation. 36 C.F.R. § 219.10(b)(1)(i). Such plan components must include "recreation settings, opportunities, and access; and scenic character." *Id.*

The Forest Service issued directives that are included in the Forest Service Handbook at 1909.12. These directives provide additional guidance and direction for Forest Plan revision processes.

*The Rio Grande National Forest*

41.    The Rio Grande National Forest consists of approximately 1.83 million acres of land in south-central Colorado.

42.    The headwaters for the Rio Grande originate within the Forest, resulting in the name of the Forest.

43.     The Forest's western boundary is marked by the Continental Divide in the San Juan Mountains. The Forest's eastern boundary is marked by the Sangre de Cristo Mountains.

44.     The Forest contains numerous habitat types, including alpine tundra, spruce-fir forests, mixed-conifer forests, pinyon-juniper woodland ecosystem, Rocky Mountain Gambel oak shrubland, montane-subalpine grassland ecosystem, and various riparian ecosystems.

45.     People travel from around the world to enjoy the Forest's scenery, recreational opportunities, and biodiversity.

46.     The Rio Grande National Forest provides key wildlife connectivity corridors linking northern New Mexico with the southern Rocky Mountains in Colorado.

*Wildlife on the Rio Grande National Forest*

47.     The Rio Grande National Forest is home to or provides habitat for a wide variety of wildlife, including ESA-listed and otherwise imperiled species. This includes black-footed ferret, Canada lynx, Gunnison sage grouse, Mexican spotted owl, New Mexico meadow jumping mouse, southwestern willow flycatcher, Uncompahgre fritillary butterfly, and yellow-billed cuckoo.

*Canada Lynx (Lynx canadensis)*

48.     The Canada lynx (lynx) is a medium-sized cat with long legs, large paws, webbed toes adapted to walking on snow, long tufts on the ears, and a short, black-tipped tail.

49.     Lynx primary food source is snowshoe hare. Lynx are highly specialized in hunting snowshoe hare. Lynx have secondary food sources. Red squirrel is a lynx secondary food

source. Lynx consume a greater diversity of prey during summer months than at other times of the year.

50.     Lynx habitat is closely correlated with snowshoe hare habitat in much of North America.

51.     Lynx are habitat specialists. In the western United States, lynx primarily occur in spruce-fir vegetation types that receive persistent snowfall. Lynx typically inhabit gentle, rolling topography with dense horizontal cover, persistent snow cover, and moderate to high snowshoe hare density.

52.     Lynx winter habitat is different from snowshoe hare winter habitat. Availability of lynx winter habitat is more limiting on lynx than snowshoe hare winter habitat.

53.     Lynx are known to persist in areas that have experienced large-scale forest mortality events. Lynx are known to reproduce in areas that have experienced large-scale forest mortality events. Lynx are known to persist in forests that have experienced insect kill events. Lynx are known to reproduce in forests that have experienced insect kill events.

54.     The average home range for lynx is 39.6 square kilometers. For female lynx, the average home range is 31.1 square kilometers. For male lynx, the average home range is 42.9 square kilometers.

55.     Lynx make exploratory movements beyond identified home ranges. The duration of these exploratory movements ranges from one week to several months.

56.     Lynx are known to disperse. Dispersal is the permanent movement of an animal to a new home range. Young male lynx are most likely to disperse. Female lynx tend to establish home ranges adjacent to their mother's home range.

57.     Lynx populations are declining across the contiguous United States. Lynx populations are declining in Colorado. Lynx populations are declining on the Rio Grande National Forest.

58.     Canada lynx are listed as threatened under the federal ESA. The U.S. Fish and Wildlife Service intends to prepare a final recovery plan for Canada lynx by December 2024.

59.     Critical habitat–as defined by the ESA–has not been designated for Canada lynx on the Rio Grande National Forest. Critical habitat–as defined by the ESA–has not been designated for Canada lynx in Colorado. The U.S. Fish and Wildlife Service is required to analyze lands in Colorado for Canada lynx critical habitat designation. It is likely that lands on the Rio Grande National Forest will be designated as critical habitat for lynx when the U.S. Fish and Wildlife Service conducts its critical habitat analysis for Colorado.

60.     Lynx experience various threats to their existence. Logging in lynx habitat is a threat to lynx existence. Logging in lynx habitat can cause adverse effects to lynx. Climate change is a threat to lynx existence. Climate change can cause adverse effects to lynx. Canada lynx are threatened by incidental trapping. Canada lynx are threatened by excess roads in lynx habitat.

61.     Snowmobiles may directly affect Canada lynx during winter months. Snowmobiles may indirectly affect Canada lynx during winter months.

62.     During winter months, Canada lynx are especially vulnerable due to physiological responses like increased heart rate and elevated stress level.

63.     Noise from snowmobiles disturbs the ability of lynx to hunt. Noise from snowmobiles increases stress to lynx.

64.     Snowmobiles may disturb lynx den sites during a time when lynx are rearing young.

65.     Snowmobiles may displace lynx. Snowmobiles may disrupt otherwise quiet winter habitat by facilitating human access into historically remote winter forest landscapes. Snowmobiles may disrupt otherwise quiet winter habitat by increasing lynx interactions with humans. Snowmobiles may disrupt otherwise quiet winter habitat by increasing hunting, trapping, and poaching mortality.

66.     Snowmobiling may result in direct collisions, death, habitat fragmentation, and potential population declines for lynx.

67.     In 2008, National Forests in the Southern Rocky Mountains added forest plan amendments known as the Southern Rockies Lynx Amendment ("SRLA") to better protect Canada lynx as a result of the lynx being listed as threatened under the ESA.

68.     The SRLA provides mandatory requirements, guidelines, and goals for the management of National Forests within the range of the Canada lynx in the Southern Rocky Mountains.

69.     SRLA continued the use of Lynx Analysis Units ("LAUs") in National Forest management. LAUs approximate the home range of a female lynx on the landscape, but are not necessarily tied to actual occupancy by any individual. Many of SRLA's provisions relate to protecting or preserving LAUs and ensuring that they are not degraded to an unsuitable condition. Because lynx protections are tied to habitat conditions in specific LAUs, their location and status are important to inform forest management activities.

70.     The Forest Service periodically updates its LAU maps to reflect changing habitat conditions on its Forests. The Rio Grande National Forest updated and changed its LAU maps during the Forest Plan revision process. These updates and changes were not reflected

in the environmental analysis supporting the revised Forest Plan. The Forest Service declined to include maps of the revised LAUs in the final Environmental Impact Statement, nor update its baseline data concerning the revised LAUs.

*Uncompahgre fritillary butterfly (Boloria acrocnema)*

71.    The Uncompahgre fritillary butterfly is a critically imperiled species. It is listed as endangered under the federal ESA.

72.    The Uncompahgre fritillary butterfly is a small butterfly with a 2–3-centimeter wingspan. Male Uncompahgre fritillary butterflies have rusty brown wings crisscrossed with black bars. Female Uncompahgre fritillary butterflies are lighter in color than males. Uncompahgre fritillary butterflies have a rusty brown thorax and a brownish black abdomen.

73.    The Uncompahgre fritillary butterfly only occurs in a small geographic area in Colorado near the headwaters of the Rio Grande. The Uncompahgre fritillary butterfly occurs on the Rio Grande National Forest.

74.    There are only eleven known colonies of the Uncompahgre fritillary butterfly. Five of the known Uncompahgre fritillary butterfly colonies occur on the Rio Grande National Forest.

75.    The necessary ecological conditions for the Uncompahgre fritillary butterfly include: (1) large patches of snow willow (Salix nivalis) above 12,000 feet; (2) flowering plants that provide nectar; and (3) functional connectivity between colonies.

76.    Snow willow (Salix nivalis) provides food for the Uncompahgre fritillary butterfly. Snow willow (Salix nivalis) provides cover for the Uncompahgre fritillary butterfly. Female Uncompahgre fritillary butterflies lay their eggs on the leaves of Snow willow (Salix nivalis).

77.     The U.S. Fish and Wildlife Service released a recovery plan for the Uncompahgre fritillary butterfly in 1994. The Forest Service relied on the Uncompahgre fritillary butterfly recovery plan in developing the 2020 Forest Plan for the Rio Grande National Forest.

78.     The U.S. Fish and Wildlife Service released a 5-year status review for the Uncompahgre fritillary butterfly in 2018. The 2018 5-year status review identified several threats to the Uncompahgre fritillary butterfly.

79.     The 2018 5-year status review identified small population size and lack of genetic diversity as threats to the Uncompahgre fritillary butterfly.

80.     The 2018 5-year status review identified butterfly collecting as a threat to the Uncompahgre fritillary butterfly. The 1994 recovery plan for the Uncompahgre fritillary butterfly identified restrictions on butterfly collecting as a recovery plan action item.

81.     The 2018 5-year status review identified grazing as a threat to the Uncompahgre fritillary butterfly. Grazing is a threat to the Uncompahgre fritillary butterfly due to trampling of colonies. Grazing is a threat to the Uncompahgre fritillary butterfly due to trampling of individual butterflies. Grazing is a threat to the Uncompahgre fritillary butterfly due to trampling of nectar sources for the butterfly. Grazing is a threat to the Uncompahgre fritillary butterfly due to removal of nectar sources.

82.     The 2018 5-year status review identified trampling from hikers/backpackers as a threat to the Uncompahgre fritillary butterfly.

83.     The 2018 5-year status review identified climate change as a threat to the Uncompahgre fritillary butterfly. Climate change is a threat to the Uncompahgre fritillary butterfly due to climate-driven impacts to alpine habitat.

84.     The 2018 5-year status review concluded that existing regulatory mechanisms were not adequate to recover the Uncompahgre fritillary butterfly. Existing regulatory mechanisms are not adequate to recover the Uncompahgre fritillary butterfly. The Forest Plan for the Rio Grande National Forest is inadequate to recover the Uncompahgre fritillary butterfly. The Forest Plan for the Rio Grande National Forest does not contribute to the recovery of the Uncompahgre fritillary butterfly.

85.     The Forest Service's Biological Assessment for the Forest Plan for the Rio Grande National Forest discussed threats to the Uncompahgre fritillary butterfly on the Rio Grande National Forest.

86.     The Biological Assessment related to the Forest Plan for the Rio Grande National Forest identified cattle grazing as a threat to the Uncompahgre fritillary butterfly.

87.     The Biological Assessment related to the Forest Plan for the Rio Grande National Forest identified wandering domestic sheep as a threat to the Uncompahgre fritillary butterfly.

88.     The Biological Assessment related to the Forest Plan for the Rio Grande National Forest identified trampling from recreational foot traffic as a threat to the Uncompahgre fritillary butterfly.

89.     The Biological Assessment related to the Forest Plan for the Rio Grande National Forest identified an increase in visitor use and dispersed recreation as a threat to the Uncompahgre fritillary butterfly.

90.     The Biological Assessment related to the Forest Plan for the Rio Grande National Forest identified existing recreational use of colony areas on the Forest as a threat to the Uncompahgre fritillary butterfly.

91.     A portion of a cattle allotment on the Rio Grande National Forest occurs across a known Uncompahgre fritillary butterfly colony.

92.     Wandering bands of domestic sheep on the Rio Grande National Forest have been observed grazing on Uncompahgre fritillary butterfly colony areas.

93.     Trampling by recreational foot traffic is a management problem in some Uncompahgre fritillary butterfly colony areas on the Rio Grande National Forest. Trampling by recreational foot traffic is a threat to the Uncompahgre fritillary butterfly.

94.     Existing recreational use of Uncompahgre fritillary butterfly colony areas on the Rio Grande National Forest is a threat to the Uncompahgre fritillary butterfly.

95.     Anticipated future increases in visitor use and dispersed recreation on the Rio Grande National Forest is a threat to the Uncompahgre fritillary butterfly.

96.     Butterfly collecting on the Rio Grande National Forest is a threat to the Uncompahgre fritillary butterfly.

97.     The 2020 Forest Plan for Rio Grande National Forest does not contain any species-specific plan components for the Uncompahgre fritillary butterfly.

98.     The Forest Service maintains that general plan components (not specific to any species or location or activity) are sufficient to contribute to the recovery of the Uncompahgre fritillary butterfly.  The 2020 Forest Plan for the Rio Grande National Forest

does not contain any standards that contribute to the recovery of the Uncompahgre fritillary butterfly.

99.     The Forest Service concluded coarse-filter forest plan components that are not species-specific sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly. The Forest Service concluded the following plan components sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly: DC-TEPC-1; G-TEPC-1; DC-WLDF-3; DC-SCC-5; DC-SCC-3; DC-TEPC-1.

100.     The plan components identified by the Forest Service as sufficiently contributing to the recovery of the Uncompahgre fritillary butterfly do not address the threats to the butterfly identified by the Forest Service and U.S. Fish and Wildlife Service.

101.     The final 2020 Forest Plan for the Rio Grande National Forest removed species-specific plan components for the Uncompahgre fritillary butterfly that had been proposed in the 2017 draft plan. The Forest Service did not adequately explain the removal of species-specific plan components for the Uncompahgre fritillary butterfly from the draft Forest Plan to the final Forest Plan. The Forest Service did not analyze the environmental consequences of not including the species-specific plan components in its NEPA analysis.

102.     Threats to the Uncompahgre fritillary butterfly on the Rio Grande National Forest will not be addressed through future project approvals or other project implementation decisions.

*Winter Recreation*

103.     The Rio Grande National Forest attracts winter recreationists who engage in a variety of outdoor pursuits on the forest, including quiet and motorized recreation.

104.     During the Forest Plan revision process, the Rio Grande National Forest admitted it "lack[ed] recreation opportunity spectrum inventories assessing current and future recreation demand needs." The Rio Grande National Forest further admitted "[t]he actual supply of recreation opportunity spectrum summer and winter settings is unknown and it is unknown whether recreation opportunity spectrum allocations established in the 1996 Forest Plan" had been met.

105.     During the Forest Plan revision Assessment process, the Rio Grande National Forest explained that the gaps in knowledge included "limited winter use data, including surveys that determine user types and impacts on the Rio Grande National Forest, and no recreation opportunity spectrum inventory specific to seasonal variations between summer and winter settings and our Forest's capacity to support winter opportunities." The Forest also acknowledged it had "limited data regarding the concept of sustainable recreation, given that sustainable recreation is a new and recent requirement in forest planning."

106.     The Grand Mesa, Uncompahgre, and Gunnison ("GMUG") National Forests– geographically located immediately to the north of the Rio Grande National Forest–is addressing winter recreation as part of its mandate to provide for sustainable recreation during forest plan revision. The GMUG National Forests released a draft revised forest plan in 2021 that includes plan components designed to address sustainable winter recreation, including providing a Recreation Opportunity Spectrum for winter recreation.

107.     Addressing winter recreation as part of forest plan revision is important due to the adverse effects it can have on wildlife. Addressing winter recreation as part of forest plan revision is important due to the potential for conflicts between different uses of the forest.

108.    Over-snow vehicles (OSVs) have impacts on a variety of resources, including air quality, water quality, vegetation and wildlife. OSVs also adversely impact the experiences of other users of National Forest lands, such as those seeking quiet recreation. OSVs degrade Wilderness characteristics, including opportunities to experience solitude and participate in primitive forms of recreation. OSV use can harm water quality, especially early or late in the season where there is a likelihood of inadequate snow levels. Damage from OSV use may also occur where wind exposes soil and vegetation. OSV use can cause significant damage to browse plants important to wildlife. OSV use compacts snow. Snow compaction can reduce the soil temperature and soil microbial activity, and can slow germination of seeds. Snow compaction can result in wet and soft trails due to slower snow melt, ultimately leading to damage by other users in the spring. Snow compaction can crush subnivean spaces and alter the competitive advantage that some snow-dependent wildlife, such as Canada lynx, enjoy over coyotes and other predators. OSVs that run over or near vegetation damage trees and shrubs by tearing at the bark, ripping off branches, or topping trees.

109.    Motors from OSV use create noise that degrades the naturalness of an area. OSV use diminishes opportunities for solitude and primitive non-motorized recreation. OSV use reduces the likelihood that the Forest Service will designate an area as Recommended Wilderness. OSV use reduces the likelihood that Congress will eventually designate such areas as Wilderness.

110.    OSV use can have adverse impacts on wildlife. The presence and noise from OSV use increases stress to wildlife in the winter. Wildlife are vulnerable in the winter. OSV use causes both a physiological and behavioral response in wildlife. OSV use facilitates

competition among species. OSV use causes displacement and avoidance of wildlife. OSV

use reduces the amount of available habitat because species avoid motorized vehicles.

Harmful impacts from winter motorized use can be significant, especially where specific

routes or open play areas cut through wildlife habitat.

111.    OSV use can have adverse impacts on Canada lynx.

112.    Technological advances in recreational machinery have increased the power and

ability of snowmobiles and other OSVs. New technological capabilities of OSVs allow riders

to navigate steeper terrain, deeper snow, and more dense forests. OSVs are able to travel

much farther into the backcountry as a result of increased power and ability of OSVs. New

technology allows OSVs to partake in activities such as high-marking—where OSVs race up

steep slopes toward ridge tops and then quickly turn before capsizing and race back down

the slope.

113.    Motorized snow bikes are becoming popular on the Rio Grande National Forest.

Motorized snow bikes are more narrow than traditional snowmobiles. Motorized snow bikes

allow riders to go through tighter spaces than traditional snowmobiles. Motorized snow

bikes allow riders to access more narrow terrain and more dense forests than traditional

snowmobiles.

114.    Increases in machine power and geographic scope of OSV activity has changed, and

exacerbated, the impacts of OSVs on the environment, wildlife, and other recreationists.

//

//

//

*Proposed Special Interest Areas on the Rio Grande National Forest*

115.    Members of the public, including Petitioners, proposed a Spruce Hole/Osier/Toltec Landscape Connectivity Zoological Area (Spruce Hole SIA) to be managed as a Special Interest Area (SIA) in the revised Forest Plan for the Rio Grande National Forest.

116.    The Spruce Hole SIA would have covered a key movement path for a variety of species between southern Colorado and Northern New Mexico. Natural Heritage New Mexico identified this area as the northern reach of the Northern Taos Plateau Wildlife Movement Focal Area. The Northern Taos Plateau Wildlife Movement Focal Area covers portions of the Rio Grande National Forest, Carson National Forest, and the Rio Grande del Norte National Monument.

117.    The Northern Taos Plateau Wildlife Movement Focal Area is known to be used by Canada lynx.

118.    The Northern Taos Plateau Wildlife Movement Focal Area is known to be used by big horn sheep.

119.    The Northern Taos Plateau Wildlife Movement Focal Area is known to be used by mule deer.

120.    The Northern Taos Plateau Wildlife Movement Focal Area is known to be used by elk.

121.    The Spruce Hole SIA would have better protected a movement path for many species between southern Colorado and northern New Mexico, including lynx, mule deer, elk, Rocky Mountain bighorn sheep, and others.

122.    The Spruce Hole SIA proposal included management direction to protect this wildlife connectivity corridor, including no new permanent roads, establishing trail/road density standards for the area, removing all temporary roads within one-year of the termination of their purpose, decommissioning and reclaiming unauthorized routes and unneeded system roads, and prohibiting oil and gas development (amongst others).

123.    The Rio Grande National Forest decided against designating the Spruce Hole SIA in the revised Forest Plan. The Forest Service explained that the area was "adequately protected" by other provisions in the revised forest plan. The Forest Service also explained that creating the Spruce Hole SIA "would increase the complexity of management areas."

124.    Members of the public also proposed designating the Wolf Creek Pass area as a SIA. The Wolf Creek Pass area is a vital wildlife corridor on the Rio Grande National Forest. The Wolf Creek Pass area would have helped focus management attention on this important wildlife movement corridor, and better provide for habitat connectivity on the Rio Grande National Forest. The Wolf Creek Pass area has been officially identified as a lynx linkage area. The Forest Service did not consider designating the Wolf Creek Pass area as a SIA.

*The Rio Grande National Forest's Land Management Plan Revision Process and the 2020 Forest Plan*

125.    Prior to initiating its Forest Plan revision process, the last Forest Plan for the Rio Grande National Forest was finalized in 1996.

126.    After the promulgation of the 2012 forest planning rules, the Rio Grande National Forest was selected as one of the "early-adopter" forests that would be amongst the first in the United States to revise its forest plan under the 2012 forest planning rules.

127.    The Rio Grande officially initiated its Forest Plan revision process on December 26, 2014. Over the course of a year from 2015-2016, the Forest Service conducted meetings with the public and other entities that resulted in the publication of Assessments and a draft Need for Change document. The Assessments and draft Need for Change document were published in March 2016.

128.    On October 28, 2016, Petitioners and others submitted scoping comments to the Rio Grande National Forest to inform its forest plan revision process. These comments were submitted during an official comment period established by the Forest Service. The Forest Service accepted these comments as timely.

129.    In September 2017, the Forest Service published a draft Forest Plan for the Rio Grande National Forest as well as an accompanying draft Environmental Impact Statement.

130.    By letter dated December 22, 2017, Petitioners SLVEC, San Juan Citizens Alliance, The Wilderness Society, and WildEarth Guardians, and others submitted comments on the Rio Grande National Forest's draft Forest Plan and draft Environmental Impact Statement. This comment letter was submitted during an official comment period established by the Forest Service. The Forest Service accepted this comment letter as timely.

131.    By letter dated December 29, 2017, Petitioners The Wilderness Society and WildEarth Guardians, and others, submitted additional comments on the Rio Grande National Forest's draft Forest Plan and draft Environmental Impact Statement. This comment letter was submitted during an official comment period established by the Forest Service. The Forest Service accepted this comment letter as timely.

132.    In August 2019, the Forest Service published a draft ROD, a Final Forest Plan, and Final Environmental Impact Statement related to plan revision on the Rio Grande National Forest.

133.    By letter dated September 30, 2019, Petitioners SLVEC, San Juan Citizens Alliance, The Wilderness Society, and WildEarth Guardians, and others submitted an objection to the final Forest Plan, Final Environmental Impact Statement, and draft Record of Decision related to the Rio Grande National Forest's revised Forest Plan. This objection was submitted during the official objection period established by the Forest Service. The Forest Service accepted this objection as timely.

134.    By letter dated October 1, 2019, Petitioners The Wilderness Society and WildEarth Guardians submitted an objection to the final Forest Plan, Final Environmental Impact Statement, and draft Record of Decision related to the Rio Grande National Forest's revised Forest Plan. This objection was submitted during the official objection period established by the Forest Service. The Forest Service accepted this objection as timely.

135.    Petitioners and their representative attended an objection resolution meeting with the Forest Service on January 14, 2020 in Alamosa, Colorado. Petitioners and their representatives attended an objection resolution meeting on January 15, 2020 in Lakewood, Colorado.

136.    In April 2020, the Forest Service reissued the Final Environmental Impact Statement related to the 2020 Forest Plan for the Rio Grande National Forest to incorporate instructions from the Objection Reviewing Officer. In May 2020, the Forest Service signed a Record of Decision and issued the final 2020 Forest Plan.

137.    Between the signing of the Record of Decision in May 2020 to the filing of this

Petition for Review, some Petitioners' staff met with Respondent Dan Dallas, Rio Grande

National Forest Supervisor, and various officials with the U.S. Forest Service and U.S.

Department of Agriculture at the local, regional, and Washington offices to discuss concerns

with the Rio Grande National Forest's revised Forest Plan. These meetings did not resolve

Petitioners' concerns with the revised Forest Plan or its implementation.

## FIRST CLAIM FOR RELIEF

## VIOLATIONS OF THE NATIONAL FOREST MANAGEMENT ACT AND ITS IMPLEMENTING REGULATIONS

### Count I: Failure to Comply with 36 C.F.R. § 219.9 – Diversity of Plant and Animal Communities (Uncompahgre Fritillary Butterfly)

138.    Petitioners incorporate by reference all preceding paragraphs.

139.    The Forest Service's 2012 forest planning rules impose substantive and procedural

obligations on the Forest Service in revising Forest Plans related to the diversity of plant and

animal communities. 36 C.F.R. § 219.9.

140.    The Forest Service's 2012 forest planning rules require Forest Plans "include plan

components, including standards or guidelines, to maintain or restore the ecological integrity

of terrestrial and aquatic ecosystems and watersheds in the plan area, including plan

components to maintain or restore their structure, function, composition, and connectivity."

36 C.F.R. § 219.9(a)(1).

141.    The Forest Service's 2012 forest planning rules require Forest Plans "include plan

components, including standards or guidelines, to maintain or restore the diversity of

ecosystems and habitat types throughout the plan area." 36 C.F.R. § 219.9(a)(2). These plan

components must maintain or restore "key characteristics associated with terrestrial and aquatic ecosystem types;" and "rare aquatic and terrestrial plant and animal communities[.]" *Id.*

142.    Forest plans must contain species-specific plan components if the Forest Service determines the plan components required by 36 C.F.R. § 219.9(a) are insufficient to "provide the ecological conditions necessary to: contribute to the recovery of federally listed threatened and endangered species…." 36 C.F.R. § 219.9(b)(1).

143.    The Forest Service concluded non-species-specific forest plan components sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly. The Forest Service concluded the following plan components sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly: DC-TEPC-1; G-TEPC-1; DC-WLDF-3; DC-SCC-5; DC-SCC-3. The 2020 Forest Plan for the Rio Grande National Forest does not contain plan components specific to the Uncompahgre fritillary butterfly.

144.    DC-TEPC-1 states: "Maintain or improve habitat conditions that contribute to either stability or recovery, or both, for threatened, endangered, proposed, and candidate species." DC-TEPC-1 does not address the threats to the Uncompahgre fritillary butterfly identified by the Forest Service and U.S. Fish and Wildlife Service. DC-TEPC-1 does not sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly.

145.    G-TEPC-1 states: "To avoid or minimize adverse effects to listed species and their habitat, management actions should be designed with attention to threatened, endangered, proposed, or candidate species and their habitats." G-TEPC-1 does not address the threats to the Uncompahgre fritillary butterfly identified by the Forest Service and U.S. Fish and

Wildlife Service. G-TEPC-1 does not sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly.

146.    DC-WLDF-3 states: "Habitat connectivity is provided to facilitate species movement within and between daily home ranges, for seasonal movements, for genetic interchange, and for long-distance movements across boundaries." DC-WLDF-3 does not address the threats to the Uncompahgre fritillary butterfly identified by the Forest Service and U.S. Fish and Wildlife Service. DC-WLDF-3 does not sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly.

147.    DC-SCC-5 states: "Structure, composition, and function of alpine ecosystems, including cushion plant communities, snow willow, alpine fell fields, and talus slopes, meet the needs of associated species, including species of conservation concern." DC-SCC-5 does not address the threats to the Uncompahgre fritillary butterfly identified by the Forest Service and U.S. Fish and Wildlife Service. DC-SCC-5 does not sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly.

148.    DC-SCC-3 states: "Structure, composition, and function of riparian areas, including streams, willow thickets, and cottonwood galleries, meet the needs of associated species, including species of conservation concern." DC-SCC-3 does not address the threats to the Uncompahgre fritillary butterfly identified by the Forest Service and U.S. Fish and Wildlife Service. DC-SCC-3 does not sufficiently contribute to the recovery of the Uncompahgre fritillary butterfly.

149.    The Forest Service's determination that the plan components required by 36 C.F.R. § 219.9(a) were sufficient to "provide the ecological conditions necessary to: contribute to the

recovery of" the Uncompahgre fritillary butterfly, 36 C.F.R. § 219.9(b)(1), is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

150.    The Final Plan for the Rio Grande National Forest violates the law by failing to include species-specific plan components for the Uncompahgre fritillary butterfly and otherwise failing to contribute to the recovery of the Uncompahgre fritillary butterfly. 36 C.F.R § 219.9. This is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

151.    The 2020 Final Plan for the Rio Grande National Forest is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

### Count II: Failure to Comply with 36 C.F.R. § 219.9 – Diversity of Plant and Animal Communities and 36 C.F.R. § 219.7 (Canada Lynx)

152.    Petitioners incorporate by reference all preceding paragraphs.

153.    NFMA imposes substantive and procedural obligations on the Forest Service in revising Forest Plans. 16 U.S.C. § 1604.

154.    The Forest Service's 2012 forest planning rules impose substantive and procedural obligations on the Forest Service in revising Forest Plans related to the diversity of plant and animal communities. 36 C.F.R. § 219.9.

155.    The Forest Service's 2012 forest planning rules require Forest Plans "include plan components, including standards or guidelines, to maintain or restore the ecological integrity of terrestrial and aquatic ecosystems and watersheds in the plan area, including plan

components to maintain or restore their structure, function, composition, and connectivity." 36 C.F.R. § 219.9(a)(1).

156.   The Forest Service's 2012 forest planning rules require Forest Plans "include plan components, including standards or guidelines, to maintain or restore the diversity of ecosystems and habitat types throughout the plan area." 36 C.F.R. § 219.9(a)(2). These plan components must maintain or restore "key characteristics associated with terrestrial and aquatic ecosystem types;" and "rare aquatic and terrestrial plant and animal communities[.]" *Id.*

157.   Forest plans must contain species-specific plan components if the Forest Service determines the plan components required by 36 C.F.R. § 219.9(a) are insufficient to "provide the ecological conditions necessary to: contribute to the recovery of federally listed threatened and endangered species…." 36 C.F.R. § 219.9(b)(1).

158.   The 2012 forest planning rules define desired conditions as: "a description of specific social, economic, and/or ecological characteristics of the plan area, or a portion of the plan area, toward which management of the land and resources should be directed. Desired conditions must be described in terms that are specific enough to allow progress toward their achievement to be determined, but do not include completion dates." 36 C.F.R. § 219.7(e)(1)(i).

159.   The plan components required by 36 C.F.R. § 219.9(a) for the Rio Grande National Forest's 2020 Forest Plan were insufficient to "provide for the ecological conditions necessary to…contribute to the recovery of" the Canada lynx. As a result, the 2020 Forest

Plan was required to include species-specific plan components required by 36 C.F.R. § 219.9(b)(1).

160.     The 2020 Final Plan for the Rio Grande National Forest includes one desired condition for Canada lynx. The Forest Service asserts DC-TEPC-1 is a desired condition for lynx. DC-TEPC-1 states the Forest Service should "maintain or improve habitat conditions that contribute to either stability or recovery, or both" for ESA-listed species.

161.     DC-TEPC-1 violates the 2012 forest planning rule's requirement that the Forest Service include plan components that contribute to the recovery of ESA-listed species such as Canada lynx. The option to manage for stability–instead of recovery–violates the 2012 forest planning rule's requirement that plan components contribute to the recovery of Canada lynx. 36 C.F.R. § 219.9(b)(1).

162.     Maintaining habitat conditions assumes existing habitat conditions are sufficient to provide for the recovery of ESA-listed species, including Canada lynx. Existing habitat conditions on the Rio Grande National Forest are not sufficient to provide for the recovery of Canada lynx.

163.     The 2020 Final Plan for the Rio Grande National Forest lacks any Desired Conditions for Canada lynx that describe the necessary ecological conditions for lynx recovery in terms that are detailed enough to provide actionable management direction.

164.     The 2020 Final Plan for the Rio Grande National Forest lacks any Desired Conditions for Canada lynx that are sufficiently specific to enable tracking their progress toward achievement.

165.    The 2020 Final Plan for the Rio Grande National Forest lacks any Desired

Conditions for Canada lynx that meet the directives for Forest Plan revision processes

contained in the Forest Service Handbook at 1909.12.

Desired conditions related to habitat for Canada lynx are specified in the Southern Rockies Lynx

Amendment.

166.    The 2020 Final Plan for the Rio Grande National Forest explains additional desired

conditions related to habitat for Canada lynx are contained in the Southern Rockies Lynx

Amendment. The Forest Service does not identify which portions of the Southern Rockies

Lynx Amendment are meant to be desired conditions for Canada lynx. Any purported

Desired Conditions contained in the Southern Rockies Lynx Amendment do not meet the

requirements for Desired Conditions in the 2012 forest planning rules. 36 C.F.R. §

219.7(e)(1)(i).

167.    The 2020 Final Plan for the Rio Grande National Forest is arbitrary and capricious,

an abuse of discretion, and/or otherwise not in accordance with the law. 5 U.S.C. §

706(2)(A).

### Count III: Failure to Comply with 36 C.F.R. § 219.10 – Sustainable Recreation

168.    Petitioners incorporate by reference all preceding paragraphs.

169.    NFMA imposes substantive and procedural obligations on the Forest Service in

revising Forest Plans. 16 U.S.C. § 1604.

170.    The Forest Service's 2012 forest planning rules impose substantive and procedural

obligations on the Forest Service in revising Forest Plans related to sustainable recreation. 36

C.F.R. § 219.10(b).

171.    The 2012 forest planning rules require Forest Plans include plan components to provide for sustainable recreation. 36 C.F.R. § 219.10(b)(1)(i). Such plan components must include "recreation settings, opportunities, and access; and scenic character." *Id.*

172.    The 2020 Final Plan for the Rio Grande National Forest does not include plan components related to winter sustainable recreation that meet the requirements of 36 C.F.R. § 219.10(b)(1)(i). The 2020 Final Plan does not establish winter recreation settings for the Rio Grande National Forest. The 2020 Final Plan does not include a winter recreation opportunity spectrum.

173.    The Forest Service concluded the 2012 forest planning rules does not impose any obligations to address sustainable winter recreation. The Forest Service concluded it could address sustainable winter recreation at some undetermined, later date when it would complete a winter travel management plan under the Travel Management Rule Subpart C.

174.    The March 10, 2020 Objection Response incorrectly states the Rio Grande National Forest completed Subpart C travel planning. The March 10, 2020 Objection Response incorrectly cites to a Forest Plan Amendment for the Flathead National Forest in Montana as evidence the Rio Grande National Forest "completed subpart C" travel planning under the Travel Management Rule.

175.    The Rio Grande National Forest has not completed Subpart C travel planning under the Travel Management Rule.

176.    The 2020 Forest Plan for the Rio Grande National Forest does not provide for sustainable winter recreation.

177.     The Forest Service's failure to include plan components related to winter sustainable recreation that meet the requirements of 36 C.F.R. § 219.10(b)(1)(i) violates the 2012 forest planning rules.

178.     The 2020 Final Plan for the Rio Grande National Forest is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF

### VIOLATIONS OF THE TRAVEL MANAGEMENT RULE:
### Failure to Comply with the Travel Management Rule Subpart C

179.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

180.     The Forest Service violated the Travel Management Rule (36 C.F.R. §§ 212.80(a), 212.81(a), 251.14), by allowing over-the-snow motorized vehicle use on the Rio Grande National Forest unless specifically restricted in the 2020 Forest Plan for the Rio Grande National Forest.

181.     The Travel Management Rule Subpart C requires that National Forests be closed to OSV use unless explicitly designated as being open to such use. 36 C.F.R. §§ 212.80(a), 212.81(a), 251.14.

182.     The 2020 Forest Plan for the Rio Grande National Forest includes a provision allowing OSV use on the Forest unless specifically closed to such use. The 2020 Forest Plan for the Rio Grande National Forest states: "Over-the-snow motorized vehicle use is allowed unless specifically restricted."

183.     The Objection Reviewing Officer concluded this provision was contrary to law. The Objection Reviewing Officer explained Petitioner's objection was correct as to the Forest

Plan provisions allowing OSV use on the Forest unless specifically closed to such use. The Objection Reviewing Officer instructed the Forest Service to "ensure plan components and other statements are consistent with 'closed unless open' per the Travel Management Rule; and ensure that any inconsistencies as they relate to travel management in plain language are rectified."

184.    In finalizing the 2020 Forest Plan for the Rio Grande National Forest, the Forest Service failed to remove language in the 2020 Forest Plan that allowed unregulated motorized OSV use on the Forest unless specifically restricted. The Forest Service failed to abide by the Objection Reviewing Officer's instructions to rectify an illegal plan provision.

185.    As a result of the violations of the Travel Management Rule, the 2020 Forest Plan is arbitrary and capricious, an abuse of discretion, and not in accordance with the law. 36 C.F.R. §§ 212.81(d), 212.55(b); 5 U.S.C. § 706(2)(A).

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF THE NATIONAL ENVIRONMENTAL POLICY ACT (NEPA) AND ITS IMPLEMENTING REGULATIONS**

**Count I: Failure to Take a Hard Look at the Effects of the 2020 Forest Plan for the Rio Grande National Forest**

186.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

187.    The Final Environmental Impact Statement for the Rio Grande National Forest's 2020 Forest Plan violates NEPA because it fails to take a hard look at the direct, indirect, and cumulative impacts of the Forest Service's proposed actions. To the extent the Forest Service relies on analysis contained in the 2020 Forest Plan or Final ROD to justify

compliance with NEPA, those too violate NEPA by failing to take a hard look at the direct, indirect, and cumulative impacts of the Forest Service's proposed actions.

188.    The Council on Environmental Quality ("CEQ") has promulgated regulations to implement NEPA, which the Forest Service used to analyze the environmental consequences of promulgating the Revised Forest Plan. *See,* 40 C.F.R. Part 1400 (1978).

189.    NEPA's implementing regulations were revised in 2020. 85 Fed. Reg. 43,304 (July 16, 2020). The 2020 regulations do not apply to the FEIS at issue in this litigation. *See* 40 C.F.R. § 1506.13 (explaining new NEPA regulations apply to projects initiated after September 14, 2020). Citations to NEPA's implementing regulations in this Petition for Review are to the 1978 regulations.

190.    The regulations implementing NEPA require the Forest Service to disclose and analyze the environmental effects of the proposed action and alternatives to it. 40 C.F.R. § 1500.1(b) (1978). Specifically, the regulation explains that "NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken. The information must be of high quality. Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." *Id.*

191.    The Forest Service is required to disclose and analyze the direct, indirect, and cumulative effects of the proposed action on the environment. 40 C.F.R. §§ 1502.16, 1508.7, 1508.8, 1508.25(c)(3), 1508.27(b)(7) (1978).

192.    When analyzing cumulative effects, the Forest Service must analyze the effects on the environment resulting from the incremental impacts of the action, and its alternatives, when

added to other past, present, and reasonably foreseeable future actions. 40 C.F.R.§ 1508.7 (1978).

193.    To satisfy the requirements of the NEPA regulations, the Forest Service must take a "hard look" at the impacts resulting from the proposed action.

194.    The Forest Service failed to take the requisite "hard look" at the direct, indirect, and cumulative impacts likely to result from implementation of the 2020 Forest Plan for the Rio Grande National Forest.

195.    The Forest Service failed to disclose and analyze a number of direct, indirect, and cumulative environmental effects from its proposed action. For example, but not limited to, the Forest Service failed to disclose and analyze the direct, indirect, and cumulative effects from implementation of the 2020 Forest Plan on the Uncompahgre fritillary butterfly (and its habitat) and Canada lynx (and its habitat).

196.    The 2020 Forest Plan for the Rio Grande National Forest, its ROD, and FEIS fail to take a hard look at the impacts of how the failure to include species-specific plan components for the Uncompahgre fritillary butterfly in the 2020 Forest Plan would impact the species and its habitat. The 2020 Forest Plan for the Rio Grande National Forest, its ROD, and FEIS fail to take a hard look at the impacts of the implementation of the 2020 Forest Plan on the Uncompahgre fritillary butterfly, its habitat, and food sources.

197.    The 2020 Forest Plan for the Rio Grande National Forest, its ROD, and FEIS fail to take a hard look at the impacts of implementation of the 2020 Forest Plan on Canada lynx. The 2020 Forest Plan, its ROD, and FEIS are based on outdated Lynx Analysis Unit (LAU) maps from 2008. The Forest Service failed to update its analysis of impacts on LAUs after

updating LAU maps in 2018. The 2018 LAU maps are different from the 2008 LAU maps for the Rio Grande National Forest. The Forest Service failed to disclose the locations of LAUs on the Forest based on the revised LAU maps from 2018 in the 2020 Forest Plan, its ROD, and FEIS. The Forest Service failed to update the data contained in its environmental analysis on the basis of the 2018 LAU maps.

198.    The Objection Reviewing Officer agreed with Petitioners that the Forest Service had not updated its NEPA analysis to reflect the new LAU maps from 2018. The Objection Reviewing Officer explained the Forest Service was committed to completing this analysis "as soon as practical." As of the date of the filing of this Petition for Review, the Forest Service has not conducted any additional NEPA analysis, nor provided the public with an opportunity to comment on such analysis, as related to the 2018 LAU maps, and impacts on LAUs resulting from the implementation of the 2020 Forest Plan.

199.    The Forest Service's failure to conduct an analysis of the impacts of implementation of the 2020 Forest Plan for the Rio Grande National Forest on Canada lynx in light of the new LAU maps, and the Forest Service's failure to disclose their location, violates NEPA's hard look requirement.

200.    This failure ensured there was no baseline from which the Forest Service can reasonably measure effects on Canada lynx and its habitat as a result of the plan's implementation. This failure ensured the Forest Service's 2020 Forest Plan FEIS was not based on accurate data because the analysis was based on outdated LAU maps.

201.    The Forest Service failed to take the requisite hard look at the direct, indirect, and

cumulative effects of implementation of the 2020 Forest Plan and associated ROD as required by NEPA, which is arbitrary, capricious, and not in accordance with the APA. 5 U.S.C. § 706(2)(A).

### Count II: Failure to Analyze a Reasonable Range of Alternatives

202.    Petitioners incorporate by reference all preceding paragraphs.

203.    The 2020 Forest Plan's ROD and FEIS failed to consider a reasonable range of alternatives in violation of NEPA.

204.    The 2012 forest planning rules requires the Forest Service to "determine whether to recommend any additional areas for designation." 36 C.F.R. § 219.7(c)(2)(vii). A "designated area" is "[a]n area or feature identified and managed to maintain its unique special character or purpose." 36 C.F.R. § 219.19.

205.    NEPA requires the Forest Service "[r]igorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a) (1978).

206.    Petitioners asked the Forest Service repeatedly to consider designating SIAs to provide additional management direction and protections to some ecologically important parts of the Forest.

207.    Petitioners asked the Forest Service to consider designating the Spruce Hole/Osier/Toltec Landscape Connectivity Zoological Area ("Spruce Hole SIA") as a SIA. Petitioners provided objective rationales for its designation.

208.    Petitioners asked the Forest Service to consider designating the Wolf Creek Pass area as a SIA. Petitioners provided objective rationales for its designation.

209.    The Forest Service did not consider the entirety of the Spruce Hole SIA proposal–including all of the recommended management direction–as part of any of the alternatives considered in the 2020 Forest Plan's FEIS. Considering the entirety of the Spruce Hole SIA proposal as part of an alternative in the FEIS was reasonable. The Forest Service failed to explain why it did not consider the Spruce Hole SIA in its entirety–including all of the recommended management direction–as an alternative.

210.    The Forest Service did not consider the designation of the Wolf Creek Pass SIA as part of any of the alternatives considered in the 2020 Forest Plan's FEIS. Considering the Wolf Creek Pass SIA as part of an alternative in the FEIS was reasonable. The Forest Service failed to explain why it did not consider the Wolf Creek Pass SIA as an alternative.

211.    The Forest Service's Need for Change document related to the Rio Grande National Forest's plan revision process recognized the importance of considering additional areas for special designation. The Forest Service's Need for Change document related to the Rio Grande National Forest's plan revision process confirmed it would consider additional areas for designation, including areas recommended by the public.

212.    The Forest Service failed to consider a reasonable range of alternatives in analyzing the impacts of the 2020 Forest Plan and its associated ROD in violation of NEPA. The Forest Service failed to take a hard look at the impacts of designating SIAs for Spruce Hole and Wolf Creek Pass, in violation of NEPA. This renders the 2020 Forest Plan, its ROD, and FEIS arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

//

## REQUEST FOR RELIEF

Petitioners respectfully request this Court:

1.      Declare that the Forest Service violated and continues to violate the law as alleged above in developing and authorizing the Rio Grande National Forest Land Management Plan;

2.      Remand this matter back to the Forest Service with instructions to comply with the law as alleged above by a date certain;

3.      Set aside and vacate the relevant and appropriate portions of the Rio Grande National Forest Land Management Plan, the Record of Decision, and Final Environmental Impact Statement pending compliance with the law;

4.      Enjoin the Forest Service and its agents from implementing projects and land management activities authorized by the Rio Grande National Forest Land Management Plan, unless and until the violations of federal law set forth herein have been corrected to the satisfaction of this Court;

5.      Issue any other relief, including preliminary or permanent injunctive relief that Petitioners may subsequently request;

6.      Award Petitioners their costs of suit and attorneys' fees; and

7.      Grant Petitioners such other and further relief as the Court deems just and equitable.

        Respectfully submitted and dated this 3rd day of November, 2021.

/s/ John R. Mellgren                      /s/ Kelly E. Nokes
John R. Mellgren (OSB #114620)            Kelly E. Nokes (Colo. Bar No. 51877)
Western Environmental Law Center          Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340     P.O. Box 218
Eugene, Oregon 97401                      Buena Vista, CO 81211
Ph. (541) 359-0990                        Telephone: (575) 613-8051

mellgren@westernlaw.org

/s/ Susan Jane M Brown
Susan Jane M. Brown (OSB #054607)
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
Ph: (503) 680-5513
brown@westernlaw.org

E-mail: nokes@westernlaw.org

*Attorneys for Petitioners*

Petitioner Addresses:

San Luis Valley Ecosystems Council
P.O. Box 223
Alamosa, CO 81101

San Juan Citizens Alliance
P.O. Box 2461
1309 East 3rd Ave., Suite 5
Durango, Colorado 81302

The Wilderness Society
1660 Wynkoop Street, Suite 1150
Denver, CO 80202

WildEarth Guardians
3798 Marshall St. Suite 8
Wheat Ridge, CO 80033