IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| SAN LUIS VALLEY ECOSYSTEMS COUNCIL, SAN JUAN CITIZENS ALLIANCE, WILDEARTH GUARDIANS, and ROCKY MOUNTAIN WILD<br><br>Petitioners,<br><br>v.<br><br>DAN DALLAS, in his official capacity as Forest Supervisor for the Rio Grande National Forest; and UNITED STATES FOREST SERVICE, a federal agency of the United States Department of Agriculture,<br><br>Federal Respondents,<br><br>and<br><br>TRAILS PRESERVATION ALLIANCE; BACKCOUNTRY DISCOVERY ROUTES; COLORADO SNOWMOBILE ASSOCIATION; and THE COLORADO 500<br><br>Applicants in Intervention. | Case No. 1:21-cv-02994-REB<br><br>**UNOPPOSED MOTION TO INTERVENE BY TRAILS PRESERVATION ALLIANCE; BACKCOUNTRY DISCOVERY ROUTES; COLORADO SNOWMOBILE ASSOCIATION; AND THE COLORADO 500** |

Pursuant to Fed. R. Civ. P. 24(a), the Trails Preservation Alliance, Backcountry Discovery Routes, Colorado Snowmobile Association, and the Colorado 500 (collectively "Recreationists") move to intervene as of right in the above-captioned case as Intervenor-Defendant. Alternatively, Recreationists move for permissive intervention pursuant to Fed. R. Civ. P. 24(b). This Motion is accompanied by declarations in support of each applicant-intervenor's motion to intervene and a Proposed Order granting Recreationists'

1

Motion to Intervene. Also, contemporaneously with this Motion to Intervene, Recreationists submit their proposed Response to Petitioners' Petition, pursuant to Fed. R. Civ. P. 24.

Prior to filing this Motion, counsel for Recreationists contacted Petitioners' Counsel and Federal Respondents' Counsel to request their position, pursuant to Local Rule 7.1(a). Counsel for Federal Respondents stated that Federal Respondents do not oppose this motion, subject to conditions to which Applicants in Intervention agree, which are included in the Proposed Order accompanying this motion. Counsel for Petitioners stated that Petitioners do not oppose this motion, subject to conditions to which Applicants in Intervention agree, which are included in the Proposed Order accompanying this motion.

## INTRODUCTION

This case centers around Petitioners' efforts to set aside the revised Rio Grande National Forest Plan ("Forest Plan" or "Revised Plan") and Final Environmental Impact Statement ("EIS"). Petitioners object in particular to the United States Forest Service's ("USFS" or "Forest Service") alleged failure to distinguish adequately between sustainable summer recreation and sustainable winter recreation in the course of addressing sustainable recreation generally, with a focus on motorized recreation. ECF No. 14 at 2. Petitioners allege that the USFS acted arbitrarily and capriciously and failed to comply with the National Forest Management Act ("NFMA") and its implementing regulations when it approved the Forest Plan by: failing to include in the Forest Plan components specific to the Uncompahgre fritillary butterfly, ECF No. 14 at 32; failing to include adequate components specific to the Canada Lynx, ECF No. 14 at 37; failing to include plan components specific to winter sustainable recreation, ECF No. 14 at 36; and

inadequately restricting over-snow motorized vehicle use in violation of the Travel Management Rule, ECF No. 14 at 14. They allege that USFS acted arbitrarily and capriciously and violated the National Environmental Policy Act ("NEPA") and its implementing regulations by failing to take a hard look at the Forest Plan's effects, ECF No. 14 at 40, in various areas, ECF No. 14 at 40–44, and by failing to analyze a reasonable range of alternatives such as proposed Special Interest Areas that Petitioners requested.

The remedies they seek, however, are much broader than merely a requirement that USFS revisit its consideration of specific plan components relating to, for example, butterflies and lynx; they seek to have all "relevant and appropriate" portions of the Forest Plan, the Record of Decision, and the EIS set aside. ECF No. 14 at 46. Even more broadly, they ask that USFS and its agents be wholly enjoined "from implementing projects and land management activities authorized by the Rio Grande National Forest Land Management Plan" until such time as the court is satisfied that all alleged legal deficiencies have been corrected. *Id.* They also raise the possibility of seeking additional yet-unspecified preliminary or permanent injunctive relief. *Id.*

Together, the Recreationist Applicants-in-Intervention work closely with one another, with the Forest Service, and with other stakeholders to develop, fund, and maintain the trail projects that make it possible for motorized recreational users to enjoy appropriately designated portions of Rio Grande National Forest. *See infra* at 5-8. These activities accord with the USFS's multiple-use mandate for National Forests; outdoor recreation was, in fact, the first listed purpose for which USFS is required to manage forests (followed by range, timber, watershed, and wildlife and fish purposes) by the

Multiple-Use Sustained Yield Act of 1960 (in addition to the purposes laid out at the time of the national forests' establishment). *See* 16 U.S.C. § 528.

As discussed below, Petitioners' requested relief, if granted, would directly and indirectly interfere with Recreationists' use and enjoyment of the forest, including by preventing and/or delaying development and implementation of new trail projects and maintenance and improvement of existing trail projects for motorized recreational users of all seasons.

## BACKGROUND

### I.    FACTUAL BACKGROUND

The pre-existing Forest Plan for Rio Grande National Forest ("RGNF") had been in place since 1996, subject to some subsequent amendments. *See* U.S. DEP'T OF AG. & FOREST SERV., RIO GRANDE NATIONAL FOREST LAND MANAGEMENT PLAN (2020).[1] In 2014, RGNF was one of the first National Forests to undertake a plan revision pursuant to new 2012 forest planning regulations. After years of meetings, assessments, analysis, and public comment, USFS authorized the 264-page Revised Plan[2] in a 70-page final Record of Decision ("ROD")[3] and 842-page final Environmental Impact Statement ("FEIS")[4] in 2020.

While motorized recreation is severely limited in Rio Grande National Forest, relative to other national forests, by its vast existing Congressional wilderness

---

[1] https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd776576.pdf.
[2] https://www.fs.usda.gov/nfs/11558/www/nepa/100663_FSPLT3_5291915.pdf.
[3] https://www.fs.usda.gov/nfs/11558/www/nepa/100663_FSPLT3_5316988.pdf.
[4] https://www.fs.usda.gov/nfs/11558/www/nepa/100663_FSPLT3_5256953.pdf  (Part  I); https://www.fs.usda.gov/nfs/11558/www/nepa/100663_FSPLT3_5256955.pdf (Part II).

designations, it is a beloved and important use of the Forest for many of the citizens to whom the Forest belongs. Jones Decl. ¶ 19.

> For many visitors, motor vehicles . . . represent an integral part of their recreational experience. People come to National Forests to ride on roads and trails in pickup trucks, ATVs, motorcycles, and a variety of other conveyances. Motor vehicles of a legitimate and appropriate way for people to enjoy their National Forests—in the right places, and with proper management.

Travel Management; Designated Routes and Areas for Motor Vehicle Use, 70 Fed. Reg. 68,264, 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. pt. 212, 251, 261, and 295) ("Travel Management Rule"). "The NFS is not reserved for the exclusive use of any one group, nor must every use be accommodated on every acre. . . . such choices and evaluations are best made at the local level[.]" *Id.*

These motorized activities accord with the USFS's multiple-use mandate for National Forests; outdoor recreation was, in fact, the first listed purpose for which USFS is required to manage forests (followed by range, timber, watershed, and wildlife and fish purposes) by the Multiple-Use Sustained Yield Act of 1960 (in addition to the purposes laid out at the time of the national forests' establishment). *See* 16 U.S.C. § 528. "These uses must be balanced, rather than given preference over one another." Travel Management Rule at 68,264.

## II.   DESCRIPTION OF APPLICANTS IN INTERVENTION

The Trails Preservation Alliance ("TPA") is a 501(c)(3) nonprofit organization whose principal goal is to preserve the sport of motorized singletrack trail riding. *See* Trails Preservation Alliance, *2021 Annual Report* (2021).[5] TPA regularly supports all forms of Off-Highway Vehicle ("OHV") recreation. *Id.* It acts as an advocate for OHV recreation and works to ensure that both USFS and the Bureau of Land Management ("BLM") allocate a fair and equitable percentage of access to trail riding on public lands. *Id.* It educates user groups on trail etiquette and supports establishment and operation of local off-road motorcycle clubs. *Id.* TPA commented extensively on the Forest Plan Revision.[6] TPA leaders and the recreationists for whom it advocates regularly enjoy motorized recreation within RGNF, and their enjoyment of RGNF will thrive or suffer as a result of this dispute's outcome. Riggle Decl. ¶¶ 6, 7, 9, 13. Don Riggle is the Director of Operations for TPA. Riggle Decl. ¶ 3. Due to his physical limitations, motorized access is the only form of access available to Mr. Riggle for recreation in RGNF. Riggle Decl. ¶ 7. Scott Jones is a consultant with TPA and has represented it in working with the Forest Service to develop and promote recreational projects in RGNF; he also enjoys motorized recreation within RGNF. Jones Decl. ¶¶ 4, 8, 13, 17.

Colorado Snowmobile Association ("CSA") was established as the Colorado Association of Snowmobile Clubs, Inc. in 1970, and eventually became the 501(c)(3)

---

[5] http://www.coloradotpa.org/wp-content/uploads/2022/04/2021TPAAnnualReport-sm.pdf.
[6] Rio Grande National Forest Plan Revision Objection, Trails Preservation Alliance (Sept. 24, 2019), https://www.coloradotpa.org/2019/09/24/rio-grande-national-forest-plan-revision-objection.

nonprofit Colorado Snowmobile Association in 2000.[7] CSA's mission is to "Advance, Protect, and Preserve the sport of snowmobiling in Colorado." *Id.* It currently represents 36 local clubs, 27 of which groom their own portions of the nearly 3,000 miles system of trails in Colorado. *Id.* Scott Jones is the Executive Director and immediate past president of Colorado Snowmobile Association. Jones Decl. ¶ 3. TPA and CSA both desire to work with USFS to plan and implement additional projects to enable motorized recreational enjoyment of RGNF. *Id.* at ¶ 20.

Backcountry Discovery Routes ("BDR") is a non-profit advocacy organization that creates off-highway routes for dual-sport and adventure motorcycle travel.[8] Its work includes rider education, safety campaigns, and promoting responsible travel for motorcyclists traveling in the backcountry, and it works with agencies and land managers to keep trails and remote roads open for motorcycling. *Id.* Bill Whitacre is a board member and Treasurer of BDR. Whitacre Decl. ¶ 3. He has spent a significant amount of time working with the Forest Service to ensure responsible utilization and sustainable use of natural resources. *Id.* at ¶ 10. His enjoyment of motorized recreation in RGNF, as well as that of many others in the BDR community, may be adversely impacted by a ruling for Petitioners in this matter. *Id.* at ¶ 6.

The Colorado 500 Charities Fund is a nonprofit organization that uses its annual Colorado 500 Ride to raise funds for schools, youth organizations, humanitarian agencies, trail and forest agency alliances.[9] Janet Lohman is its President and Executive

---

[7] Colorado Snowmobile Association, https://snowmobilecolo.com/content.aspx?page_id=22&club_id=45117&module_id=64219 (last visited May 12, 2022).
[8] https://ridebdr.com/mission/.
[9] https://www.colorado-500.org/about.

Director. Lohman Decl. ¶ 3. The Ride hosts an average of 250 participants for a 6-day ride throughout Western Colorado, mainly through Gunnison, Rio Grande, and Uncompahgre National Forests. *Id.* ¶ 4. The Colorado 500 advocates responsible trail use and holds special use permits from USFS and the Bureau of Land Management. *Id.* ¶ 5. Since 1981, over 175 organizations and individuals have benefited from Colorado 500 charitable support, including schools, students who have received college scholarships, local clubs such as 4-H, medical organizations, and riding groups. *Id.* ¶ 6. Significant funds have also been dedicated to Forest Service grants, the Trail Preservation Alliance, and search and rescue and emergency services organizations. *Id.* Any restriction of or interference with motorized recreational activities or existing or new trail projects on Rio Grande trails would adversely affect the 500 and its riders' use and enjoyment of RGNF, as well as its charitable activities, which depend on funds earned in part from the ride's route through RGNF. *Id.* at ¶ 7.

## ARGUMENT

### I.  APPLICANTS SHOULD BE GRANTED INTERVENTION AS OF RIGHT.

Federal Rule of Civil Procedure 24(a) allows a party to intervene where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Therefore, "a nonparty seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cty. v. United States*, 928 F.3d 877, 889 (10th

Cir. 2019). The Tenth Circuit in particular "follow[s] a somewhat liberal line in allowing intervention," *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (cleaned up), "and thus favors the granting of motions to intervene." *Kane Cty.*, 928 F.3d at 890 (quoting *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *Barnes*, 945 F.3d at 1121 (quoting *San Juan Cty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (en banc)). Moreover, "the requirements for intervention may be relaxed in cases raising significant public interests." *Kane Cty.*, 928 F.3d at 890 (quoting *San Juan Cty.*, 503 F.3d at 1201).

A party seeking to intervene as of right must also demonstrate Article III standing, but only "if the intervenor wishes to pursue relief not requested by an existing party." *Kane Cty.*, 928 F.3d at 886. Recreationists' interests differ from those of the United States, but they seek to intervene as Respondents, seeking the same denial of Petitioners' requested relief that the United States seeks. Since both the United States and Recreationists seek denial of Petitioners' requested relief (and thus to defend the Revised Plan), Recreationists need not demonstrate Article III standing. *See id.*[10]

### A. APPLICANTS' MOTION TO INTERVENE IS TIMELY.

Timeliness of a motion to intervene "is assessed in light of all circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual

---

[10] Even if Recreationists were required independently to demonstrate Article III standing, they would easily satisfy such a requirement. *See Kane Cty.*, 928 F.3d at 888 (allegation of substantial risk that unfavorable outcome of litigation could result in additional traffic that would diminish intervenors' enjoyment of nearby wilderness sufficient to confer standing).

9

circumstances." *Kane Cty.*, 928 F.3d at 890–91. "Delay in itself does not make a request for intervention untimely." *Id.* (cleaned up). "The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." 7C Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1916 (3d ed.). Moreover, "if the intervention will not delay the termination of the litigation intervention ordinarily will be allowed." *Id.*, citing *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001) (motion to intervene two-and-a-half years after suit was filed was timely where only discovery, discovery disputes, and motions to dismiss on jurisdictional grounds had occurred prior to motion).

Here, the existing parties have entered a joint case management plan setting out a briefing schedule which Recreationists have no interest in disturbing. *See* ECF No. 12 at 3. Recreationists request to file their responsive brief on August 22, 2022, one week after Federal Respondents' responsive brief is due under the proposed briefing schedule, and over a month before Petitioners' reply brief (if any) is due under that schedule. *See id.* Recreationists stipulate (as reflected in their Proposed Order) that they do not seek to object to the administrative record filed by the government. Accordingly, the existing parties will suffer no delay nor any other form of prejudice from the timing of Recreationists' intervention in this matter. The Motion is timely.

**B.    APPLICANTS HAVE A LEGAL INTEREST IN THE SUBJECT OF THIS ACTION THAT MAY BE IMPAIRED BY THE LITIGATION.**

The interest requirement demands that "an applicant must have an interest that could be adversely affected by the litigation." *Kane Cty.*, 928 F.3d at 891 (quotation marks and citation omitted). "As the Rule's plain text indicates, intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Jones v. Prince*

10

*George's Cty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). And that interest need not be *in*, but merely "*relating to* the property or transaction which is the subject of the action." *Kane Cty.*, 928 F.3d at 892 (alteration in original) (quoting *San Juan Cty.*, 503 F.3d at 1200). A "history of advocating for the protection of . . . federal public lands," as Recreationists have long advocated for protection of Forest lands dedicated to motorized recreational use, creates an interest in that may be impaired by the litigation if a party to the litigation seeks to limit that protection, as Petitioners here seek (both directly and indirectly) additional limits on motorized recreation areas of RGNF. *See Kane Cty.*, 928 F.3d at 892. Recreationists therefore have a legal interest in the subject of this action.

If the Court grants Petitioners' requested relief, the Plan Revision will be set aside, and all land management activities authorized under it will be enjoined pending the Court's satisfaction that Petitioners' grievances are resolved. *See* ECF No. 14 at 46. This relief would preclude development of new motorized recreational projects. Lohman Decl. ¶ 7; Riggle Decl. ¶ 13; Jones Decl. ¶ 20. It would also limit maintenance of existing projects, placing them at risk of disrepair and abandonment. Whitacre Decl. ¶ 9; Jones Decl. ¶¶ 21, 22. Both Recreationists' existing and potential future opportunities for use and enjoyment of RGNF would be impaired by these results. *Id.*

### C. APPLICANTS' INTERESTS ARE NOT REPRESENTED BY THE EXISTING PARTIES.

Applicants-in-Intervention must show that their interests may not be adequately represented by the existing parties—here, by Federal Respondents. "This burden is minimal, and it is enough to show that the representation 'may be' inadequate." *Kane Cty.*, 928 F.3d at 892 (cleaned up). Where a party seeking to intervene and a representative party share "identical" interests, adequate representation is presumed. *Id.*

11

at 892. "But where the purportedly adequate representative . . . is a governmental entity, this presumption can be rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." *Id.* (cleaned up). Moreover, "the possibility of divergence of interest need not be great in order to satisfy the burden of the applicants." *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009) (cleaned up). And "[a]n intervenor need only show the *possibility* of inadequate representation." *Id.* (emphasis in original).

The fact that an intervenor shares the government's objective of defending an agency's decision does not establish adequate representation. *WildEarth Guardians*, 573 F.3d 992. To the contrary, "the intervenor's showing is easily made when the party on which the intervenor must rely is the government, whose obligation is the represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." *Id.* (cleaned up). Here, Recreationists advocate for a very specific interest in the management of RGNF: defending motorized recreational uses. The government, by contrast, represents all citizens with any interest in the use of RGNF that falls within USFS's multiple-use mandate; that mandate requires the weighing of many types of use that are competing and frequently incompatible. This is precisely the sort of possible conflict that the Tenth Circuit holds satisfies the inadequate representation showing. *WildEarth Guardians*, 573 F.3d at 996. *See also Kane Cty.*, 928 F.3d at 893 (intervention proper where "the government has multiple objectives and could well decide to embrace some of the environmental goals" opposed by intervenors). Recreationists thus satisfy the inadequacy standard.

## II. APPLICANTS SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION

Alternatively, Recreationists should be granted permissive intervention. Fed. R. Civ. Pro. 24(b)(1)(B) authorizes the court to permit intervention on a timely motion by any person who "has a claim or defense that shares with the main action a common question of law or fact." Such intervention "is a matter within the sound discretion of the district court[.]" *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424,1427 (10th Cir. 1990). "Rule 24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the existing parties," and Recreationists' motion presents no risk of such delay or other such prejudice. *See supra* at 9-10. And Recreationists have defenses to the claims asserted by Petitioners and to the relief being sought, which seeks to set aside the Forest Plan Revision and require creation of a new Forest Plan less friendly to Recreationists' interests. Recreationists easily satisfy this standard, which "requires only that the intervenor's claim or defense share a common question of law or fact with the main action." 7C Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1911 (3d ed.). Thus, at minimum, Recreationists requests that this Court grant them permissive intervention because their defenses to the claims asserted by Petitioners raise common questions of fact and law.

## CONCLUSION

For the foregoing reasons, this Court should grant Recreationists intervention as of right, or, in the alternative, permissive intervention.

13

DATED: May 12, 2022.

        Respectfully submitted by:

        /s/ *Joseph A. Bingham*_____
        Joseph A. Bingham
        MOUNTAIN STATES LEGAL FOUNDATION
        2596 S. Lewis Way
        Lakewood, CO 80227
        Telephone: (919) 649-7403
        Email: jbingham@mslegal.org
        Attorney for Applicants-in-Intervention

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2022, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause a notification to be sent to the following counsel of record:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JOHN P. TUSTIN, Senior Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611

COLE FINEGAN
United States Attorney

Attorneys for Defendants

John R. Mellgren
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, Oregon 97401

Kelly E. Nokes
Western Environmental Law Center
P.O. Box 218
Buena Vista, CO 81211

Susan Jane M. Brown
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232

Attorneys for Petitioners

/s/ Joseph A. Bingham
Joseph A. Bingham