**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| SAN LUIS VALLEY ECOSYSTEMS COUNCIL, SAN JUAN CITIZENS ALLIANCE, WILDEARTH GUARDIANS, and ROCKY MOUNTAIN WILD, | )<br>)<br>)<br>)<br>)<br>) Case No. 1:21-cv-02994-REB |
| Petitioners, | ) **DECLARATION OF SCOTT JONES** |
| v. | ) |
| DAN DALLAS, in his official capacity as Forest Supervisor for the Rio Grande National Forest; and UNITED STATES FOREST SERVICE, a federal agency of the United States Department of Agriculture, | )<br>)<br>)<br>)<br>)<br>) |
| Federal Respondents, | ) |
| and | ) |
| TRAILS PRESERVATION ALLIANCE; BACKCOUNTRY DISCOVERY ROUTES; COLORADO SNOWMOBILE ASSOCIATION, and THE COLORADO 500 | )<br>)<br>)<br>)<br>) |
| Applicants in Intervention. | |

I, Scott Jones, declare as follows:

1. I am over 18 years of age, and I am competent to testify from my first-hand knowledge as to the matters set forth in this Declaration.

2. I am a citizen of the United States residing in Mead, Colorado.

1

3.      I am the Executive Director and immediate past president of Colorado Snowmobile Association ("CSA").

4.      I am also a current member of Colorado Off Highway Vehicle Coalition, Colorado Blizzards Snowmobile Club; Routt Powder Riders Snowmobile Club; North Park Snow Snakes Snowmobile Club; Tyler's Backcountry Awareness.  I also serve on the State Recreational Trails committee as Vice Chairman and representative of Congressional District 4, the Colorado Co-op, and the Colorado Forest Health Council under Colorado Parks and Wildlife, and pursue numerous local issue driven collaboratives on a wide range of issues ranging from the new Colorado Wild Pass to collaborating with the State Tourism Office. I serve as a consultant for the Trails Preservation Alliance.

5.      I have lived in Colorado for 14 years and have consistently visited the Rio Grande National Forest, as Organizations I work with have hosted trail design workshops through the National Off-highway Vehicle Conservation Council, annual state snowmobile conventions, snowmobile riding clinics.

6.      I was recognized as part of the statewide outdoor partnership Collaborative of the Year in 2017; inducted to the National Off-Highway Vehicle Conservation Council Hall of Fame for state partners; and I am currently Vice President of United Snowmobile Alliance.

7.      Snow grooming and snowmobile access on the Rio Grande has been basically a settled and non-controversial issue for more than a decade. Conflict increased over Resource Management Plan development and remains at high levels until the issue is resolved.

8.      In addition to my snowmobile pursuits, I participate in a wide range of motorized and non-motorized recreational activities throughout the region including OHV usage,

Jeeping, hunting, driving for pleasure, recreational shooting, fishing and hiking. My recreational activities occur throughout the year.

9. Colorado Snowmobile Association partners with a large number of local volunteers, more than 30 local clubs and Colorado Parks and Wildlife to provide snow grooming on more than 3,000 miles of routes across the state. More than 300 miles of these trails are provided in the Rio Grande National Forest and provide access for recreational opportunities for tens of thousands of members of the public on the Rio Grande.  These routes are overwhelmingly paid for by the snowmobile clubs and associations, and provide recreational access for all forms of recreation, often without those users even being aware of these efforts, which have been occurring for more than 50 years. CSA has been heavily involved in finding continuing insurance coverage and reducing insurance costs for our member clubs. These resources provide significant infrastructure for search and rescue efforts for all users and significant access to private lands across the forest.  I have participated in virtually all facets of these activities, ranging from reviewing and scoring grants for groomer purchase and groomer operations, training groomer operators, and assisting to clear trails and routes, to efforts to continue to insure these grooming activities, chainsaw training for operators.

10. CSA assists with wide range of search and rescue efforts, such as lengthy involvement in recent search and rescue study sanctioned by Colorado legislature that resulted in limited immunity being provided for those search and rescue team members. CSA also provides trailhead avalanche beacon checkpoints which are used for the benefit of all users.  We assist in education of users regarding snowmobile boundaries for legal usages, the need for seasonal closures to protect wildlife and other resources and trail

etiquette resources. We have represented recreational interests with regard to wolf reintroduction; wolverine reintroductions; and other species management efforts such as lynx.

11. Most of the routes we groom in the winter are maintained as roads or trails in the summer time. Our efforts also ensure that routes are open in the spring and not blocked by fallen trees or washed out. CSA and USFS have worked hard to respond to unprecedented wildfire impacts on the Rio Grande by leveraging resource such as Off-Highway Vehicle grants with snowmobile grants and clubs resources and volunteers.

12. If the current forest plan were set aside or activities under it were enjoined, this would create significant user conflicts and delay in all types of activities enjoyed by our members. I have observed similar litigation regarding the Pike/San Isabel National Forest challenging its travel plan, and numerous smaller projects, such as developing parking areas and trailhead facilities, have stalled completely. CSA clubs are each permitted through the US Forest Service, and renewal of these grooming club permits could be at risk if forest plan with withdrawn.

13. CSA and I have participated in every step of planning process for the forest plan revision, ranging from initial collaborations and development of assessments of forest issues and resources through a successful objection to the Rio Grande Forest Plan. This involvement has spanned preparing and submitting hundreds of pages of comments to numerous meetings with Forests and district staff to address a large number of issues. In addition to participating in these forest level planning efforts, I have also participated in numerous planning efforts such as partnering with the USFS in development of the 2012

Forest Planning Rule and the 2015 Winter Travel Management Rule and addressing issues at the local levels such as providing avalanche training and safety resources.

14. The groups I work with and represent, such as TPA, CSA, and COHVCO, are responsible for a significant portion of funding and volunteer work maintaining trails authorized for motorized recreational use within RGNF.

15. This is funding and partnership is good for the Forest not only because it enables motorized recreation, but because it provides recreational access for all forms of recreational usages.  This funding also assists in providing quality recreational experiences to all users as facilities are maintained and services are provided such as trash pickup.  Often these routes are critical in allowing search and rescue teams to recover of all types of forest users should they become injured in the back country.  This access is critical to other management activities such as wildland firefighting as maintained trails serve as fire breaks and also allow timely response to areas for fire management efforts.

16. This funding in partnership with CPW also expands law enforcement presence on the Rio Grand National Forest, as this funding expands the number of Forest Protection Officers on the Forest.  These law enforcement officers provide a critical resource for all activity on the forest, as the mitigate illegal behavior and protect natural resources with their mere presence in the area.

17. I submitted comments regarding the proposed EIS on behalf of TPA, CSA, and COHVCO in support of proposed Alternative C due to the high levels of flexibility that this Alternative provided for all forms of activity on the forest.  We believed this flexibility was critical to the long-term success of the RMP and the RMP ability to adapt to unforeseen

challenges. The lack of flexibility in the existing plan, was a major reason it needed to be updated as the existing RMP prohibited cutting of trees due to impacts of mtn pine beetles and other species.  We are aware that this prohibition was a major barrier to the Forest ability to tree areas when the pine beetle mortality issues started to appear.

18. Environmentalist groups such as WildEarth Guardians instead supported proposed Alternative D, which would have had dramatic negative impacts on motorized recreational use of RGNF by significant expansions of areas where existing NEPA authorized motorized routes would have in conflict with management prescriptions of the RMP.  This conflict was immediately apparent with the large scale expansion of designations such as recommended Wilderness. This conflict between existing NEPA and the new Forest Plan would have laid the groundwork for future NEPA to close these highly valuable routes.

19. From my experience working with multiple National Forests, I am aware that motorized recreational activities in Rio Grande National Forest are already severely limited due to the relatively high proportion of existing Congressional Wilderness designations within RGNF. However, the opportunities that exist are an integral part of use and enjoyment of the Forest by me and other motorized recreational users.

20. Motorized recreationists and their representatives like me, TPA, CSA, and COHVCO desire to work with USFS to plan and implement additional projects to enable motorized recreational enjoyment of RGNF. But it will not be feasible to propose or evaluate such projects if the 2020 Forest Plan Revision is set aside, as sought by Petitioners in this case. Any such proposals or projects would be delayed by such a decision.

21. Not only would a decision to set aside the 2020 Forest Plan Revision and enjoin management activities authorized under the plan delay or prevent future projects and improvements; it would jeopardize *existing* projects and trails by preventing essential maintenance. Left unmaintained, trails can easily be lost altogether; if they fall sufficient disrepair they will be abandoned.

22. If Petitioners' requested relief is granted, user conflicts will continue and increase, trail may be lost due to maintenance authorized by the plan not being allowed to occur, and other projects such as improving trailhead facilities will be delayed or abandoned; this would interfere with or prevent my (and other recreational users represented by CSA and TPA) use and enjoyment of the Forest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of May 2022.

*[signature: Scott Jones]*

Scott Jones